**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FACTEON, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 13-6765 |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMP CARE PARTNERS, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

PISANO, District Judge

Before the Court is a motion to dismiss filed by Defendant Pfizer Inc. ("Defendant" or "Pfizer") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff, Facteon, Inc. ("Plaintiff" or "Facteon"), opposes this motion. The Court decides these matters without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court grants Defendant's motion.

## I.    Background

Facteon is a corporation that provides working capital financing to companies by purchasing all or a portion of its accounts receivables at a discount by way of "factoring agreements." Pursuant to its standard factoring agreement, Facteon (a) purchases its clients' accounts receivables in advance of their payments; (b) collects payment of those accounts receivable; and (c) upon receipt of payment of those accounts receivable, collects the funds advances and associated fees and remits any balance to the clients.

In or around September 2009,[1] Comp Care, a company that provides medical testing services, approached Facteon with an offer to sell a portion of its accounts receivables. Facteon alleges it completed its standard due diligence investigation, and then entered into a factoring agreement with Comp Care on or about December 23, 2009 (the "Comp Care Agreement"). Pursuant to the Comp Care Agreement, Facteon purchased $1,754,000 in invoices allegedly owed to Comp Care by JBS, a non-party, in 2011 (the "JBS Receivables"). Also pursuant to the Comp Care Agreement, Facteon purchased more than $6 million in accounts receivable that Comp Care claimed it was owed by Pfizer at some point between November 2012 and November 2013 (the "Pfizer Receivables").[2]

Facteon alleges that, sometime in the summer of 2013, it became concerned when payment of the Pfizer and JBS Receivables was not forthcoming. Facteon then contacted Pfizer and JBS about the status of payment, and was advised that neither Pfizer nor JBS had any information supporting the sums claimed to be outstanding and due to Comp Care. Facteon accordingly undertook an investigation to determine the reason for the delayed payments. Plaintiff alleges that both Pfizer and JBS provided Facteon truthful information regarding the amounts they owed to Comp Care; for example, the total valid accounts receivable outstanding to Comp Care totaled less than 10% of the balance of the Pfizer Receivables sold to Plaintiff.

Facteon then brought this suit, seeking to recoup losses relating to its factoring agreement with Defendant Comp Care against two distinct Defendants: (1) Comp Care; Samuel Perez ("Perez"), the president of Comp Care; Rene Guzman ("Guzman"); Alaine Kamin-Mack; Lina Garcia; and Karol Gambino (together, the "Comp Care Defendants") and (2) Pfizer. Facteon

---

[1] In its Complaint, Facteon alleges that its initial discussion with Comp Care, and the execution of the agreement between the two companies, took place in 2010. The date on the Facteon-Comp Care factoring agreement, attached to the Complaint as Exhibit A, appears to have been signed on December 23, 2009.
[2] While not directly stated in the Complaint, Plaintiff Facteon alleges that it "purchased $6,731,000 in Pfizer Receivables during the past year." Compl. ¶ 49. Plaintiff's Complaint was filed November 6, 2013.

generally alleges that the Comp Care Defendants carried out an "illicit [and] wide-ranging scheme orchestrated by Defendant Samuel Perez . . . and his co-conspirators to defraud [Facteon] through his enterprise, Comp Care." Compl. ¶ 2. Facteon's allegations include claims that one or more of the Comp Care Defendants fabricated and sold to Facteon fake invoices from Pfizer and JBS, set up fake email addresses through which they falsely verified the fabricated JBS and Pfizer invoices, created a fake website that was actually owned by Defendant Perez, and falsely claimed an association between contacts verifying the receivables and the alleged Comp Care debtors. Facteon alleges that its CEO, Thomas Nort, confronted Perez on October 3, 2013, regarding the seemingly fraudulent invoices. Facteon alleges that Perez did not deny the allegations of fraud, and that Perez admitted that Comp Care was, in reality, owed only $76,606 in accounts receivable from Pfizer, despite Comp Care's sale of $6 million of invoices to Facteon.

The vast majority of the Complaint contains counts against one of more of the Comp Care Defendants, alleging claims for breach of contract, fraud, breach of the implied covenant of good faith, misappropriation and theft, conversion of property, federal and state civil Racketeering and Corrupt Organizations Act ("RICO") claims, common law conspiracy, foreclosure, injunctive relief, and receivership.

Facteon does not assert against Pfizer any of the fraud, conspiracy, or theft claims that it alleges against the Comp Care Defendants. Rather, the Complaint contains four causes of action against Pfizer for negligent misrepresentation, detrimental reliance, equitable estoppel and implied contract. Facteon alleges that before purchasing accounts receivable pursuant to its factoring agreements, it normally completed a "verification process" that included receipt of a written acknowledgment from the underlying customer that "each invoice reflected services

actually rendered."  Compl. ¶ 5.  Pursuant to the Comp Care Agreement, there were detailed procedures to be followed by Facteon and Comp Care, including numerous provisions that would protect Facteon's interests and provide notice to the "customer" that purportedly owed the invoice amount.  *See generally* Compl. Ex. A.  The Comp Care Agreement also provided that Facteon "shall have the right at any time . . . to notify any and all Account Debtors of the assignment to [Facteon] . . . and to direct . . . payment . . . directly to [Facteon]."  Compl. Ex. A at Section 10.  Pfizer was not a party to the Comp Care Agreement.

In its Complaint, Facteon alleges that it departed from its normal "verification process" when it purchased invoices that Comp Care claimed were in connection with services it had performed on behalf of Pfizer.  Facteon alleges that this departure was "mandated" by an employee in Pfizer's Global Occupational Health and Wellness Group, Michelle Dorry.  *See* Compl. ¶¶ 42–46.  Specifically, Facteon alleges that, shortly after entering into the Comp Care Agreement, Facteon's Underwriter, Carol Jelks, contacted Ms. Dorry on or about January 4, 2010, to explain the nature of its relationship with Comp Care and to ascertain the best way to verify the balance due and procure an acknowledgement for each Pfizer Receivable.  Facteon alleges that it received the following "instructions" in an email from Ms. Dorry:

> Pfizer has a contract with the vendor, Comp Care Partners for managing our drug/alcohol testing program.  Currently invoices are submitted and approved through Pfizer's Ariba platform.  Comp Care Partners representative for Ariba is Rene Guzman; her email address is rene.guzman@ariba-network.com.  Rene can be contacted at the email address above.

> My contact information is as follows if you need to contact me further:

> Michelle Dorry, Manager Global Occupational Health and Wellness
> Michelle.Dorry@pfizer.com.

Compl. ¶ 44.  This email is the lone written communication from anyone at Pfizer, and is the basis of Facteon's claims against Pfizer.[3]

At least two and a half years after this January 4, 2010 interaction, at some point between November 2012 and November 2013, Facteon purchased over $6 million of alleged Pfizer Receivables from Comp Care.  Facteon alleges that, prior to purchasing these receivables, it sent an acknowledgement to Rene Guzman for approval.   This form is addressed to Pfizer, despite the fact that Ms. Dorry's email fails to describe Guzman as a Pfizer employee, in accounts receivable, or at Pfizer's New York address.  When Ms. Guzman signed the acknowledgement regarding certain invoices allegedly from Pfizer, Facteon purchased the alleged Pfizer Receivables from Comp Care.   Facteon does not allege that it ever showed its acknowledgement form to Pfizer, or actually mailed this form to Pfizer's address.  There is no allegation that Facteon made any effort to contact Pfizer over this period, to confirm its alleged interpretation of Ms. Dorry's email "instructions" from over two years earlier, or to verify the receivables with an actual Pfizer employee before purchasing them.  Facteon alleges that it only contacted a Pfizer employee to contact the amount of invoices allegedly due to Pfizer in about mid-2013.  Facteon's investigation later revealed that Ms. Guzman is actually a business associate of Defendant Perez, and that the email address for "rene.guzman@ariba-network.com" is false as the domain is owned by Perez.

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When

---

[3] There appears to be a dispute regarding the content of this email.  Pfizer asserts that the email attached to and cited in the Complaint is a version forwarded to Facteon by Defendant Perez.  Pfizer states that the direct email sent from Ms. Dorry to Facteon on January 4, 2010, has one material difference; specifically, Ms. Dorry's email refers Facteon to the email address "renee.guzman@ariba-network.com" rather than "rene.guzman@ariba-netwrok.com." At this stage of the proceedings, and as Pfizer recognizes, the Court assumes the truth of the allegation in the Complaint.

reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the Plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). When assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Any legal conclusions are "not entitled to the assumption of truth" by a reviewing court. *Id.* at 679. Rather, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id. See also Fowler*, 578 F.3d at 210 (explaining that a proper complaint "must do more than allege a plaintiff's entitlement to relief"). Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation omitted).

Generally, a district court may not consider matters extraneous to the complaint when determining a Rule 12(b)(6) motion to dismiss. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). This means that the district court relies on "the complaint,

attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  A district court may, however, appropriately consider "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Angstadt v. Midd–West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004).

## III.   Discussion

As discussed, Plaintiff Facteon's Complaint asserts four claims against Pfizer:  negligent misrepresentation, detrimental reliance, or equitable estoppel.  The Court addresses each claim individually below.

### A.   Negligent Misrepresentation

Under New Jersey law, a claim for negligent representation requires "(1) an incorrect statement, (2) negligently made, (3) upon which plaintiff justifiably relied, and (4) resulted in economic loss or injury as a consequence of that reliance." *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011) (citing *H. Rosenblum, Inc v. Adler*, 93 N.J. 324, 333–34 (1983)).  Like any other negligent tort, negligent misrepresentation requires proof "that the putative tortfeasor breached a duty of care." *Sander v. HR Trust Servs*., LLC, Civil Action No. 08-1383, 2009 U.S. Dist. LEXIS 86194, at *9 (D.N.J. Sept. 21, 2009) (quoting *S. Broward Hosp. Dist. v. MedQuist, Inc.*, 516 F. Supp. 2d 370, 395 (D.N.J. 2007)).

Here, Plaintiff Facteon asserts that it is bringing its negligent misrepresentation claim pursuant to Section 552 of the Restatement (Second) of Torts, which governs information negligently supplied for the guidance of others.  Specifically, Section 552 states:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if

> he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552 (1977).  To state a claim under Section 552, a plaintiff must allege sufficient facts that establish that the defendant (1) in the course of its profession, supplied false information for plaintiff's guidance in a business transaction; (2) the defendant failed to exercise reasonable care in gathering the information; (3) the plaintiff relied on the false information in a transaction that defendant knew the information would influence; and (4) the plaintiff suffered pecuniary losses.  *Somarelf v. American Bureau of Shipping*, 720 F. Supp. 441, 452 (D.N.J. 1989).  Negligent misrepresentation under Section 552, accordingly, requires the same basic elements as a common law claim for negligent misrepresentation, except in regards to the "duty of care" element.  Under Section 552, liability only attaches when the defendant has a pecuniary interest in the transaction in which the information is given.  "If he has no pecuniary interest and the information is given purely gratuitously, he is under no duty to exercise reasonable care and competence in giving it."  Restatement (Second) of Torts § 552 cmt. c.

Here, Plaintiff has failed to allege any facts establishing that Pfizer had any pecuniary interest in the transaction between Comp Care and Facteon.  To the extent that Facteon addresses this point at all in its brief, it appears to contend that Pfizer's interest existed in continuing to "receive [Comp Care's] support" as a vendor and that Facteon's "funding obviously was essential to Comp Care's ability to 'perform' to its obligations for Pfizer."  *See* Pl.'s Opp. Br. at 19, 22.  This argument, however, is completed unsupported by Facteon's pleading.  The Complaint contains no allegations that this theoretical pecuniary interest was a topic of conversation in the January 4, 2010, phone call between the representatives of Facteon and Pfizer, and there are no allegations relating to any reliance by Pfizer on Comp Care's services (as opposed to any other vendor) or any discussion of Comp Care requiring financing to stay in

business.  Rather, the information provided to Facteon by the Pfizer representative was given gratuitously; accordingly, there was no obligation to exercise reasonable care in providing this information and liability cannot fairly extend to Pfizer.  Further, the Complaint fails to reveal that Facteon discussed with Pfizer—in either the single phone call or the email—how much Comp Care typically billed to Pfizer, the amount of receivables Facteon contemplating purchasing from Comp Care, or when this purchase of receivables would take place.  Without any such allegations, the Court cannot fairly extend to Pfizer a duty of care that encompasses millions of dollars of responsibility and extends thirty months into the future, particularly when there is no evidence of subsequent confirmation or any further contact between Facteon and Pfizer.

To that regard, even if Facteon had properly alleged that Pfizer owed it a duty of care, Facteon has failed to establish that it justifiably relied upon the statements made by Pfizer.  *See Mason*, 774 F. Supp. 2d at 704.  Facteon's claim against Pfizer is based on its contention that it reasonably relied upon the email sent from Ms. Dorry for how to confirm the work that Comp Care performed; specifically, it alleges that the email sent from Ms. Dorry to Facteon contained "instructions" that created a "Verification Process approved and mandated by Pfizer," in which Facteon was instructed that Ms. Guzman would verify invoices on behalf of Pfizer.  Compl. ¶¶ 42, 44–46, 48.  Facteon alleges that only after Ms. Guzman signed an acknowledgement form would it purchase any Pfizer receivables.  First, to the extent that the email did "mandate" a certain verification process, the Court finds it patently unreasonable for Facteon to have relied singularly upon that email for purchasing the relevant Pfizer receivables at least two and a half years later, in the absence of any further confirmation or contacts between them.  *See* Compl. ¶ 49.  This is particularly true when the language of the email warns of the potential for change in

the way that the invoices are submitted; Ms. Dorry directly states that the invoices are submitted and approved "currently" through the Ariba platform.  *See* Compl. ¶ 44.  Further, and perhaps more significantly, Facteon's interpretation of the email sent from Ms. Dorry is simply implausible. In the email, Ms. Dorry clearly indicates that Ms. Guzman is a representative of Comp Care and not an employee of Pfizer.  The email never states that Ms. Guzman should be contacted on "Pfizer's behalf" to approve Comp Care receivables, or that Ms. Guzman has the power to approve invoices generally.  There is simply no way to read the email as "mandating" or otherwise creating a verification process in which Ms. Guzman, a representative of Comp Care, would approve of invoices for Facteon's purchase of Pfizer receivables.  *See* Compl. ¶¶ 42, 44, 48, 57; Pl.'s Opp. Br. at 8, 11–12.  To the extent that Facteon did interpret and rely on the email that way, this reliance was unreasonable as a matter of law.  Accordingly, Plaintiff has failed to establish a plausible claim for negligent misrepresentation, and the claim must be dismissed.

      B.    <u>Detrimental Reliance</u>

Next, Facteon has brought a claim for detrimental reliance against Pfizer.  "Under New Jersey law, a plaintiff may prevail on a detrimental reliance claim (also referred to as promissory estoppel) if she proves: '(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment.'" *Millar v. Pitman Bd. of Educ.*, Civil No. 10-4104 (RBK/JS), 2011 U.S. Dist. LEXIS 63962, at *6–7 (D.N.J. June 13, 2011) (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)).

A "clear and definite promise" is an indispensible element of detrimental reliance.  *See Malaker Corp. Stockholders Protective Committee v. First Jersey Nat'l Bank*, 395 A.2d 222, 230

(N.J. App. Div. 1978).  The *Malaker* Court stressed that "an express promise of a 'clear and definite' nature' was necessary to establish a claim for promissory estoppel; this language suggested "that New Jersey Courts expect proof of most, if not all, of the essential legal elements of a promise before finding it to be 'clear and definite.'"  *Pop's Cones, Inc. v. Resorts Intern. Hotel, Inc.*, 704 A.2d 1321, 1325 (N.J. App. Div. 1998).  However, later New Jersey cases "tended to relax strict adherence to the *Malaker* formula for determining whether a prima facie case of promissory estoppel exists."  *Id.*   Accordingly, Facteon argues that, based on this more relaxed standard, it has sufficiently alleged a "clear and definite promise" in that "Pfizer promised that the 'Ariba-Network' was the proper methodology in which Plaintiff could obtain verification of the receivables it was considering for acquisition."  Pl.'s Opp. at 19.  The Court notes, as an initial matter, that the *Pop's Cone* Court emphasized that any relaxation of this standard is more appropriately applied in the cases involving contractual negotiations where a promise has been made in the course of negotiations that did not result in a final agreement.  *See id.*  This is no such case.  More significantly, regardless of the showing of a proof that is necessary to establish a clear and definite promise has been made, a party still must allege some semblance of a "clear and definite promise."  Here, in its Opposition, Facteon argues the existence of a promise that is totally devoid from its own allegations, including the content of the January 4, 2010 email.  The email contains no language that can be reasonably construed as a promise that is "clear, unconditional and definite."  *Mejias v. Am. Boychoir Sch.*, 2011 U.S. Dist. LEXIS 82692, at *14 (D.N.J. July 27, 2011) (citing *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 574 (D.N.J. 2002) (citing *Bonczek v. Carter-Wallace, Inc.*, 701 A.2d 742 (N.J. App. Div. 1997))).  Accordingly, this failure to allege any such facts dooms Plaintiff's claim for promissory estoppel as a matter of law.

Further, even if the Court were to assume that there were sufficient allegations of a promise in Facteon's Complaint, Facteon has failed to allege any facts establishing or leading to an inference that Pfizer had any expectation that Facteon would rely on its statements in the January 4, 2010 email.  Facteon appears to have relied not on the actual words in Pfizer's email—which provide contact information and an invitation to follow-up with more questions—but on its interpretation of Pfizer's email as creating a "verification process" that was "mandated" by Pfizer. *See* Compl. ¶¶ 42, 46.  As discussed, the language of the email makes any such interpretation patently unreasonable.  Pfizer could not have reasonably expected its email to be interpreted in the manner alleged by Facteon, particularly when it stated that invoices were "currently" submitted through Ariba Networks.  The facts, as alleged by Facteon, fail to allow for any reasonable inference that Pfizer had an expectation that Facteon would rely on its statements more than two and a half years later when purchasing certain receivables from Comp Care.

Finally, Plaintiff has failed to allege any facts allowing for an inference that its reliance on any "promise" by Pfizer was reasonable.   Facteon alleges that it relied on a single email sent thirty months earlier, which contained no acknowledgement or instructions for a verification process of Pfizer invoices.  The email only contains a referral to an individual at an entity through which Comp Care invoices were purportedly sent.  Facteon has failed to allege that it made any effort to contact Pfizer or confirm that the information contained within this email was valid in late 2012 or 2013, when the purchases allegedly occurred.  Overall, Facteon has failed to allege enough facts to establish a plausible claim for promissory estoppel, and its claim must be dismissed.

C.    <u>Equitable Estoppel</u>

Facteon has also brought a claim for equitable estoppel against Pfizer.  In New Jersey, "the doctrine of equitable estoppel is applied only in very compelling circumstances."  *Davin, L.L.C. v. Daham*, 746 A.2d 1034, 1040 (N.J. App. Div. 2000).  New Jersey courts typically apply equitable estoppel "where the interests of justice, morality and common fairness clearly dictate that course."  *Id.* (quoting *Palatine I v. Planning Bd.*, 628 A.2d 321 (N.J. 1993)).  In order to properly establish a claim for equitable estoppel, a plaintiff

> must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment.

*Phillips v. Borough of Keyport*, 107 F.3d 164, 182 (3d Cir. 1997) (quoting *Miller v. Miller*, 478 A.2d 351, 355 (N.J. 1984)).

As with its other claims, Facteon has failed to allege any actionable "representations" made by Pfizer, or that it reasonably and justifiably relied on these representations.  *See Knorr v. Smeal*, 836 A.2d 794, 799 (N.J. 2003); *C.R. v. J.G.*, 703 A.2d 385, 395 (Ch. Div. 1997).  Further, even if these shortcomings did not preclude consideration of equitable estoppel, the Court cannot find that Plaintiff has sufficiently alleged facts establishing that this is a case with "very compelling circumstances," such that "the interests of justice, morality and common fairness clearly dictate" granting the relief sought here against Pfizer.  *See Davin*, 746 A.2d at 1040.  Pfizer was contacted once by Facteon, an entity with which it had no prior relationship.  When Facteon started purchasing Pfizer receivables over two years after this communication, it made the decision to rely on its own interpretation of a "verification process" without any attempt to confirm or otherwise follow-up with Pfizer.  To hold Pfizer responsible for Comp Care's alleged fraudulent scheme would offend the notions of fairness and justice that are intended to guide the

application of the doctrine of equitable estoppel.  Accordingly, Facteon has failed to adequately

plead several elements necessary for equitable estoppel, and its claim must be dismissed.

     D.    <u>Breach of Implied Contract</u>

Under New Jersey law, there are two types of implied contracts:  (1) implied-in-fact, and

(2) implied-in-law.  *See Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747,

752 (N.J. 1996).  In its Complaint, Facteon asserts that Pfizer breached an implied-in-fact

contract between the parties.[4]  A contract that is implied-in-fact "is in legal effect an express

contract and varies from the latter only insofar as the parties' agreement and assent thereto have

been manifested by conduct instead of words."  *St. Barnabas Medical Ctr. v. County of Essex*,

543 A.2d 34, 39 (N.J. 1988) (internal quotations omitted).  In other words, the distinction

between an express and implied contract is based on the way the parties manifest their mutual

assent; "[c]ontracts are 'express' when the parties state their terms and 'implied' when the parties

do not state their terms." *See Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004).  An implied-in-

fact contract "depend[s] on mutual agreement and intent to promise, and can be established by

objective proofs."  *Id.* (internal quotation omitted).

A review of the Complaint demonstrates a complete lack of an agreement between Pfizer

and Comp Care, either verbally or through the conduct of Pfizer.  Plaintiff's assertions otherwise

are belittled either by its own actions or the January 2010 email upon which its claim relies.  For

example, Plaintiff asserts that "Plaintiff and Defendant Pfizer's conduct created a legally

enforceable agreement as Plaintiff agreed to provide working capital financing to support Comp

Care's business, based upon which Pfizer was receiving the benefit of Comp Care's services."

---

[4] In its Opposition, Plaintiff alleges that it has also established that an implied-in-law contract existed between the parties.  To the extent that such a claim was in the Complaint, Plaintiff has failed to allege any facts that support the necessary element of establishing that Pfizer was "unjustly enriched at the expense of [Facteon.]"  *Wanaque Borough*, 144 N.J. at 575.

Compl. ¶ 191.  Plaintiff goes on to explain that Pfizer "benefited from Facteon's financial support for its vendor in exchange for the promise that Facteon would receive payment directly from Pfizer." *Id.*  Plaintiff, however, has alleged facts that establish that it did not start purchasing invoices from Comp Care until November 2012, meaning that any financial support it may have provided to Comp Care did not start until November 2012.  Accordingly, not only was the alleged benefit that Pfizer was to receive absent for at least two and a half years after the January 2010 interaction, but Facteon's own inaction for over two and a half years after the alleged "agreement" weakens any basis for an implied-in-fact contract.  Further, even the most liberal reading of the January 2010 email reveals no intent to promise anything to Facteon by Pfizer such that any sort of implied contract was created.  Contrary to Facteon's assertions, the email does not read as promising to approve Comp Care's invoices for payment to Facteon.  Likewise, the email does not indicate that Pfizer relied on or otherwise needed Comp Care's services such that it would be invested in its relationship with Facteon, nor does it refer to any understanding that Comp Care required financing to stay in business.  Rather, the email only reads as Ms. Dorry voluntarily offering referral information to Facteon's representative.  Overall, Facteon's assertions regarding any implied-in-fact contract finds no support in either the actual text of the January 2010 email, Facteon's own allegations, or the conduct of Facteon.  Accordingly, it cannot form the basis of a plausible claim, and Plaintiff's claim for breach of implied contract must be dismissed.

## IV.    Conclusion

The Complaint, as alleged, establishes that Facteon was the victim of an intricate and fraudulent scheme, which cost it millions of dollars in damages.  While the Court sympathizes with Facteon, there is no basis in the Complaint for any claims against Pfizer.  Accordingly, and

for the reasons set forth above, the Court grants Pfizer's motion to dismiss.  An appropriate

Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  November 26, 2014